IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA



Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL CASE NO. 1:11mj398 |
| v. | ) | |
| | ) | |
| FARID AHMAD, | ) | |
| a/k/a "FRED," and | ) | |
| | ) | |
| NAEEM AHMAD, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jonathan Myles Lund, having been duly sworn, hereby, depose and state as follows:

1.     This affidavit is submitted in support of a criminal complaint for FARID

AHMAD, also known as "FRED," and NAEEM AHMAD, charging that, within the Eastern

District of Virginia, they intentionally, knowingly, and unlawfully purchased, received, and

possessed electronics knowing they were stolen from an interstate carrier, in violation of Title

18, United States Code, Section 659.

2.     I am employed as a Special Agent of the Federal Bureau of Investigation (FBI)

and have been so employed since 2009. Currently, I am assigned to the Financial Institution

Fraud Squad at the Washington Field Office, Northern Virginia Resident Agency, Manassas,

Virginia. My law enforcement duties include, but are not limited to, the investigation of alleged

violations of federal criminal statutes that involve financial institutions, the investigation of

complex financial crimes, extensive document review, analysis, and witness interviews, and the

preparation, presentation, and service of criminal complaints, arrest, and search warrants

1

pursuant to investigations of financial crimes.

3.      I have participated in the investigation of the instant offense. The facts and
information contained in this affidavit are based upon my personal knowledge of the
investigation, information obtained from other law enforcement personnel, and review of
documents related to this investigation. All observations referenced in this affidavit that were
not made by me were related to me by the person who made such observations. Unless
specifically indicated, all conversations and statements described in this affidavit are related in
substance and in part only and are not intended to be a verbatim recitation of such statements.
This affidavit does not contain every detail or aspect of this investigation, but rather sets forth
those facts that I believe are necessary to demonstrate probable cause in support of an application
for a criminal complaint.

4.      In or around early 2010, thieves stole a large number of Apple Inc. products,
mainly iPhones, from passengers of the Washington Metropolitan Area Transit Authority
(METRO). In response to a robbery on January 14, 2010, Metro Transit Police Department
(MTPD) arrested SUBJECT #1 near the Metro Green Line at Shaw/Howard Station in
Washington, D.C. Following his arrest, SUBJECT #1 told a MTPD detective that employees
working at PCC WIRELESS, a phone kiosk in Fashion Centre at Pentagon City (Fashion
Centre), located at 1100 South Hayes Street, Arlington, Virginia, were willing to pay cash for
Apple Inc. products. MTPD subsequently contacted the Arlington County Police Department
(ACPD) about investigating the purchase of stolen Apple Inc. products in Fashion Centre.

5.      On or about March 5, 2010, ACPD conducted an undercover operation at Fashion
Centre in an effort to corroborate the information provided by MTPD. An ACPD police officer,
acting in an undercover capacity, hereafter referred to as "UC1," approached NAEEM, a male at

2

the PCC WIRELESS cellular phone kiosk. The intention of ACPD was to corroborate that NAEEM was the individual purchasing stolen Apple products in Fashion Centre and to introduce a second undercover officer, hereafter referred to as "UC2," to sell stolen electronics to NAEEM. During the conversation, UC1 discussed selling numerous telephones to NAEEM. NAEEM instructed UC1 not to go to any other sales clerks besides himself or his brother "FRED." NAEEM then wrote his name and telephone number and his brother FRED's name and telephone number on a PCC WIRELESS business card. NAEEM asked UC1 the type and quantity of phones UC1 had available to sell. UC1 stated that another individual, UC2, had several iPhones to sell.

6.      On or about March 18, 2010, UC1 and UC2 approached NAEEM at PCC WIRELESS in Fashion Centre. NAEEM was on a telephone call but told UC1 that he would be on break in twenty minutes. NAEEM called UC1. They subsequently met in the Food Court at Fashion Centre. UC1 and UC2 discussed the sale of phones with NAEEM and showed NAEEM an Apple iPhone. NAEEM said he did not have money with him to buy the phone but if UC2 would write down a list of products UC2 wanted to sell, NAEEM would speak with his brother FRED. UC2 and NAEEM agreed that UC2 would meet FRED.

7.      On or about April 21, 2010, UC2 approached NAEEM at PCC WIRELESS in Fashion Centre. During their conversation, UC2 told NAEEM the phones NAEEM was interested in buying were stolen. UC2 told NAEEM that UC2 would often steal electronics, including phones, from the stock room of stores. NAEEM inquired about the type of phones UC2 had available to purchase. NAEEM asked UC2 to go home and return with the stolen phones so NAEEM could purchase them. NAEEM told UC2 he would pay $250 for an 8 gigabyte phone in the box or a 16 gigabyte phone without the box. NAEEM stated he would pay

3

$300 for a 32 gigabyte phone. NAEEM also stated that he wanted to buy four phones for $1,000. NAEEM said he resold the phones for $300, and it was difficult to sell the phones without accessories. UC2 asked if NAEEM needed time to get the money, and NAEEM said he would just withdraw the money from an automated teller machine.

8.      On or about April 28, 2010, UC2 approached NAEEM at PCC WIRELESS at Fashion Centre. UC2 haggled with NAEEM about the price NAEEM would pay UC2 for a stolen iPhone. NAEEM agreed to pay $250 for the iPhone. NAEEM stated he had more money and was ready to purchase additional phones. NAEEM said he and FRED were selling the phones to random customers. NAEEM said for future purchases he would pay $250 for 16 gigabyte iPhones and $300 for 32 gigabyte iPhones. NAEEM wanted to purchase four or five phones at a time.

9.      On or about July 20, 2010, UC2 called NAEEM. During their conversation, NAEEM spoke about the types of phones he preferred to purchase. UC2 said UC2 was a criminal and could only get what UC2 could steal. NAEEM stated that he was no longer working in Arlington, VA, but provided his new location in Potomac Mills Mall in Woodbridge, VA. NAEEM also stated that he was working in the Fredericksburg, VA and Spotsylvania, VA areas. UC2 stated that he would travel down to Potomac Mills Mall at the end of the week to sell NAEEM some phones. NAEEM stated that if he could not make the meeting, FRED would be able to take NAEEM's place.

10.     On or about July 23, 2010, UC2 parked in front of Potomac Mills Mall near Marshall's and Home Goods. UC2 called FRED to let him know UC2 was at the mall. FRED came to UC2's car and entered the front passenger door. UC2 and FRED discussed the sale of an iPhone, laptop, and carton of cigarettes for $420. FRED paid UC2 and took the items to

4

FRED's Nissan vehicle where FRED placed them in the rear seat. FRED returned to the mall. UC2 realized FRED had paid UC2 an additional $200. UC2 called FRED who returned to the same location and accepted $200 from UC2.

11.     On or about May 23, 2011, UC2 approached NAEEM at PCC WIRELESS in Potomac Mills Mall. During their conversation, UC2 inquired if NAEEM and FRED were still in the business of buying stolen phones. NAEEM confirmed that he and FRED were still interested in buying stolen phones. UC2 told NAEEM there was someone at FedEx that provided UC2 the shipping information and truck route so UC2 could steal the boxes of electronics from the FedEx truck. UC2 told NAEEM that wholesale deals are all UC2 was doing. UC2 discussed the products currently available to purchase, which included twenty-seven iPhones and fourteen Macbooks. NAEEM said he was interested in buying the twenty-seven iPhones, but not the Macbooks. UC2 showed NAEEM one of the iPhones being sold. NAEEM asked to buy the iPhone. UC2 and NAEEM agreed on $200 for the phone. NAEEM called FRED to verify they would buy the phones. After speaking briefly with NAEEM, FRED spoke with UC2 over the phone. FRED told UC2 to bring everything, referring to the electronic items, and FRED would bring $10,000.00. FRED and NAEEM would pay $200.00 per phone and work out a deal on the rest of the items. FRED asked to meet UC2 for the transaction on Wednesday, May 25, 2011 at 6:00 p.m. when FRED would be working at the Potomac Mills Mall. FRED said he and NAEEM would both be able to make it to the meeting with UC2. UC2 agreed to arrive Wednesday at 6:00 p.m. with the twenty-seven iPhones and fourteen Macbook laptop computers that UC2 told FRED were stolen from FedEx.

12.     On or about May 25, 2011, UC2 met FRED and NAEEM in the parking lot of Potomac Mills Mall to conduct the aforementioned transaction. FRED and NAEEM handed

approximately $6,400.00 to UCE2 in exchange for twenty-seven iPhones and fourteen Macbook computers. NAEEM then placed the phones in the trunk of his car. At that point, law enforcement arrested FRED and NAEEM based on probable cause.

13.     The investigation, including a review of records and photographs from the Virginia Department of Motor Vehicles, revealed that the individual whom NAEEM AHMAD originally introduced as his brother "FRED" is actually his brother FARID AHMAD.

14.     Based on the above information, I submit that probable cause exists to believe that, within the Eastern District of Virginia, FARID AHMAD, also known as "FRED," and NAEEM AHMAD intentionally, knowingly, and unlawfully purchased, received, and possessed electronics, knowing they were stolen from an interstate carrier, in violation of Title 18, United States Code, Section 659.

15.     Accordingly, I respectfully request that a criminal complaint be issued for FARID AHMAD, also known as "FRED," and NAEEM AHMAD.

_____

Jonathan Myles Lund
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 26th day of May, 2011.

_____
/s/

Ivan D. Davis
United States Magistrate Judge

6